UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | |
| ) | Case No. 21-CR-00464 (RCL) |
| ) | |
| **JON THOMAS MOTT,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S SETENCING MEMORANDUM**

**COMES NOW** Defendant, Jon T. Mott (Mr. Mott), by and through his attorney of record, and for his Sentencing Memorandum states as follows:

### I.  Introduction

Mr. Mott was one of participants in the protest that occurred on January 6, 2021. This protest has been cast in the light of a riot and insurrection, a threat to democracy and other such pearl clutching terms. To speak of those events in this manner particularly when discussing an individual defendant is unjust and misleading. Mr. Mott is not a rioter nor is he an insurrectionist. He is a law-abiding citizen who, like any of us could, found himself caught up in the events of a day which began lawfully and peacefully and then dominoed into the situation in which he finds himself now. Mr. Mott regrets his unlawful conduct and has accepted responsibility for it, actions which demonstrate his character. His actions for which he stands before this Court were not planned, nor did he engage in the January 6 protest with any ill intent or malice. He acknowledges his errors in judgment and criminal conduct and is ready to answer for it.

1

## II. Facts and Background

The facts of this case are simple. Mr. Mott traveled to Washington D.C. to protest what he believed to be an unlawful and corrupted election result. He did so fully within his rights under the First Amendment of the Constitution to petition for a redress of grievances and under the lawfully obtained permits for the protests which had been previously acquired[1]. Mr. Mott participated in the protest, moving with the crowd which became more and more agitated. Prior to Mr. Mott being present at the entrance to the Capitol, a breach occurred which left the Capitol building open and accessible to the protestors. Mr. Mott was not present when the breach occurred and did not participate in the initial entry.

Mr. Mott has stated that he was moving forward with a group of protestors and saw them entering the Capitol building freely. He further stated that he believed it was ANTIFA that had breached the Capitol and that he wanted to be present inside as a counter to them. Mr. Mott was not confronted by any members of law enforcement as he made entry, nor was he given any orders by them. In fact, Mr. Mott spoke with one of the officers standing by the entrance to the Capitol as he entered and told him, "I will protect you if I have to". Such statement was consistent with his belief that ANTIFA had made entry into the building and ANTIFA has a known and violent history of confrontation with law enforcement[2].

Once inside the Rotunda, Mr. Mott demonstrated no plan or purpose, merely haranguing loudly both the other protestors and law enforcement. Mr. Mott regrets his decision to enter the

---

[1] The Metro PD released their report detailing the various demonstrations and protests which they had prepared for, listing these protests as being permitted events.
https://drive.google.com/file/d/1H3mHiUZCz9jyfDFTTpYw7VuYCgMtuLWW/view
[2] https://www.csis.org/blogs/examining-extremism/examining-extremism-antifa
https://www.police1.com/terrorism/articles/police-countermeasures-to-extremism-Dm5ADkCnOCf15F9F/

Capitol and makes no excuse for his conduct. He merely requests that as this Court weighs sentencing it not impugn a motive or intent to his conduct which was not present.

### III.     Addressing the Government's Position

In presenting his own memorandum regarding sentencing, the Government's memorandum (ECF 53) must be addressed. Therein the Government makes many assertions regarding Mr. Mott, several of which are pure speculation and factually misleading. Rather than simply providing an alternate narrative, Mr. Mott's argument regarding sentencing would be better and more concisely presented to this Court with an incorporated rebuttal.

The Government relies on a five-point argument for why Mr. Mott should be sentenced to a period of incarceration. Namely that Mr. Mott entered the Capitol Building with a large group, walked to the rotunda, exchanged words with law enforcement, has a GiveSendGo account for legal expenses, and shows no genuine remorse for his actions.

To the five points:

1. Mr. Mott has readily admitted to entering the Capitol building with a group of others, and as the Government pointed out, Mr. Mott explained his reasoning for why he believed he could enter the Capitol (*see* ECF 53 at 12). It is important to distinguish that he was neither the instigator nor the animus of the entry, merely one of a crowd that was in motion. Further, the Government points out both by narrative and by photos the law enforcement officers standing at the entrance where Mr. Mott entered, officers which Mr. Mott told he would defend. At no time did these officers seek to obstruct or issue orders barring entry to the group with which Mr. Mott found himself, calling into question the Government's assertion that the officers "vainly

attempted to prevent the rioter's unlawful entry..." (*see* ECF 53 at 2). It strains all credulity that under the chaotic conditions which transpired Mr. Mott could have come to any conclusion about actions which the officers did not take. This is a retroactive argument to impose precognition onto Mr. Mott and to color the truth of the events as they transpired.

2. Mr. Mott admits to being in the Rotunda and did experience the effects of a chemical irritant, however this was not at the time of his entry into the Capitol, instead, as the Government states, it occurred previously (*see* ECF 53 at 3). To specify that Mr. Mott made his way to the Rotunda after having been hit by a chemical irritant is to attempt to draw a correlation between the two and paint a picture of a man who fought his way through the efforts of law enforcement to make entry to the Capitol. This is factually not the case and to remark on the presence of one with the other is misleading.

3. Mr. Mott admits to having had verbal communication with law enforcement. However, a running theme throughout the Government's sentencing memorandum is the use of adverbs and adjectives in relation to Mr. Mott's actions. Descriptors which, aside from seeking to infer a certain mental state of which no one but Mr. Mott and God can speak with any authority, are just as easily categorized in an entirely different way which change the whole context. In this case, the Government uses the term, "aggressively" (*see* ECF 53 at 2) to describe Mr. Mott's interaction with law enforcement. It is equally as plausible that Mr. Mott was arguing *passionately* with law enforcement, that he was haranguing *boisterously* with law enforcement due to the noise volume in the room, that he was arguing *vehemently* with law enforcement,

etc, etc. In fact, the nearest thing to aggression that Mr. Mott can have said to have done was his verbal reaction to the officer's use of a baton to prevent him from moving forward. An unwise reaction, but a reaction none the less and one which did not produce any action against law enforcement.

4. Mr. Mott admits to maintaining a GiveSendGo account and admits to the rhetoric used to describe his need for funds. The insinuation that the Government seeks to make is that the rhetoric contained there is evidence of his ongoing state of mind. This is simply not the case. First, when one is seeking to raise funds, it is only natural that he would use such language as would tend to motivate people to support his cause. It is no secret that there are a large number of citizens in this country who have lost faith in their Government. It is also no secret that this same group of individuals views any overt actions taken by the Government to be inherently sinister and with ill intent, from Ruby Ridge to Waco, to the actions of Homeland Security and the FBI post 9/11. As misinformed as these people are, they are willing to put their money where their mouth is.

    Second, Mr. Mott has admitted fault by pleading guilty in this case. This is evidence of a change of mind. While Mr. Mott may have spoken of his solidarity with the "Stop the Steal" movement at the time of his arrest, there is an immeasurable volume of soul searching that one does when he is brought before the feet of Lady Justitia. This sobering experience evaporates the intoxicants of ideology and misguided idealism and causes one to reflect on the reality of the world in which he lives. This realization does not solve the problem of the necessity of funding one's

time before the sword and scales, and so there is a certain level of pragmatism that is to be expected from Mr. Mott as he seeks to address his monetary needs.

5. The Government asserts that Mr. Mott has failed to "express genuine remorse…" (*see* ECF 53 at 2). Again, the Government seeks to arbitrarily define Mr. Mott's state of mind and the authenticity of his words and actions. It begs the question, what is the standard of genuineness which the Government alludes to? Must Mr. Mott grovel on hands and knees? Must he weep and beg forgiveness? Remorse is a state of emotional regret as a result of the acceptance of personal responsibility. As an emotional state, it can exhibit in as many variations as there are people.

Further, the Government makes the argument regarding Mr. Mott's lack of remorse based only on his post-arrest statement which they assert was an attempt to downplay his actions (*see* ECF 53 at 14). It should be noted by this Court that those statements were made in context of an interview with law enforcement. As such, they were not uttered as a defiant excuse, but rather in an explanatory context to the inquiries of figures of authority. Additionally, as argued under point 4 above, not only has time passed since Mr. Mott's arrest, time which he has given to reflection, but also, he has admitted his guilt by pleading guilty. In so admitting, Mr. Mott has by necessity accepted responsibility for his conduct and does indeed feel remorse for it.

### IV.    Character of the Defendant

Mr. Mott is a loving husband and father as well as a contributing member of his community. He evidences what it means to be an American with his love of God, family, and Country. He is an entrepreneur and business owner which provides for the stability and welfare of his family as well as the economy of his community. Aside from one instance of a

misdemeanor conviction in Oklahoma, the facts of which are merely that he was not aware of the different laws which governed the carrying of a firearm in Oklahoma as opposed to his home state, Mr. Mott has been a law-abiding citizen with no adverse interactions with the law. Though the Government makes allusion to finding "silencers" in Mr. Mott's residence (which they fail to substantiate by any evidence or finding) there is no criminal action pending for this alleged possession and Mr. Mott asserts that they were not "silencers", but part of his gun cleaning supplies as a method to move solvents and cleaners down the bores of long guns. Guns which Mr. Mott not only possesses lawfully, but which this Court granted him special consideration to use while this matter was pending (*see* ECF at 41 and 42).

Mr. Mott's community has come out in support of him and vouched for his character (*see* Exhibit A). In fact, the sheriff of the county in which he resides has written a letter commending Mr. Mott (*see* Exhibit B). Mr. Mott has no history of civil unrest or any comparable incident. In taking the totality of the color of the person of Jon Mott, this Court can see a picture of what a hard working American should aspire to.

### V.   Sentencing Considerations

While the Government has put forward three sentencing considerations, citing to 18 U.S.C. § 3553(a) namely;

1. The need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law;
2. The need for the sentence to afford adequate deterrence; and,
3. The need to avoid unwarranted sentencing disparities.

the selfsame code states another consideration, that the sentence be "sufficient, but not greater than necessary" 18 U.S.C. § 3553(a).

It is again necessary to provide a rebuttal to the Government's assertions of the application of the three considerations they set forth in order to address the more appropriate sentencing of this case. Though evidencing zeal in performing their duty, the Government has errored in their quest for a more extreme sentence. The facts of Mr. Mott's actions and position simply do not support their requested judgment of this Court.

1. To the first, the Government makes argument that the events of January 6 were an attack on the rule of law and further cites to the opinion of the Honorable Judge Hogan to the effect that jail time should be expected in these cases (*see* ECF 53 at 15) rather than probation. The failure of logic here is the question of the many and the one. Mr. Mott does not stand here with any other co-defendants, merely himself and his actions, which he has admitted guilt for. It is a dangerous line to assert universal culpability for the entirety of the events of January 6 and impugn the same to each individual defendant. This, by necessity, implies and invokes a grand, undefined and ambiguous conspiracy linking all January 6 Defendants. This poses an insurmountable obstacle as the Courts have, on numerous occasions defined a conspiracy as actions which lay forth a specific crime, the intent and forethought to commit said crime, and the assisting of others in the same intended crime. *See* United States v. Childress, 313 U.S. App. D.C. 133, 58 F.3d 693, 700 (1995), United States v. Ali, 870 F. Supp. 2d 10, 19 (D.D.C. 2012), United States v. Borda, 786 F. Supp. 2d 25, 42 (D.D.C. 2011), United States v. Eiland, 525 F. Supp. 2d 37, 41 (D.D.C. 2007), United States v. Thomas, 525 F. Supp. 2d 17, 22 (D.D.C.

2007), and <u>United States v. Farrell</u>, No. 03-311-1 (RWR), 2005 U.S. Dist. LEXIS 14021, at *12 (D.D.C. July 8, 2005).

Neither law enforcement, nor the Government can produce any evidence of this grand conspiracy as defined by the law which links all January 6 Defendants so as to make all equally culpable.

Indeed, there is no evidence, charge, or direct assertion that Mr. Mott engaged in any conspiracy, nor that he had any intent to do other than protest against what he believed at the time to be a genuine grievance. The cascade of events which occurred which led to Mr. Mott being present in the Capitol were not planned and did not arise from some sinister prior plot. Thus, in considering what sentence to impose which would reflect the seriousness of the offense, this Court should look no further than the details of the actual offense itself. By the same token, in considering how the sentence will promote respect for the law, any sentence at all will do so. A sentence imposes some inescapable consequence and therefore will achieve the end of imposing respect for its power.

The question then is one of severity. Does the offense at hand require this Court to do more than place Mr. Mott under its watchful eye and take from him monetary remuneration? What would be gained by incarceration? If the punishment is to fit the crime, then does a misdemeanor for parading and picketing warrant locking Mr. Mott in a detention facility, depriving him of his ability to work, and exacerbating the familial suffering? Mr. Mott has admitted his guilt and accepted responsibility for his actions of his own free will. In so doing he has placed himself at the mercy of this Court. This does not negate that sentence must be imposed, but in so stepping forward and taking responsibility for his conduct and admitting to his crime, this Court should take into

consideration that judgment is also to the end of instruction and accountability, not to crush. Regardless of this Court's sentence, Mr. Mott will live out the remainder of his life in his community, a wiser man. Among the many goals of the actions of the Court is the rehabilitation of the offender. Rehabilitation begins by an admittance of wrongdoing and acceptance of responsibility, as Mr. Mott has done.

2. To the second, the Government argues for general deterrence and specific deterrence when imposing sentence. The Government argues that this Court must give the greatest consideration to, in short, making an example out of Mr. Mott to present a warning to potential future rioters (*see* ECF 53 at 15 and 16). This argument falls somewhat flat in the face of the nigh universal conviction rate for all January 6 Defendants, regardless of their sentence. If ever there was a deterrence, the universal findings of guilt is it. If that alone is not sufficient, the vilification of all January 6 defendants in the mass media for the past two years accompanied by the stigmatization and anecdotal warning that they have become is more than sufficient to produce the desired effect.

The use of incarceration to make an example out of Mr. Mott, when his crime is merely picketing and parading, evinces images of the Romans crucifying petty thieves by the side of the public roads. Were Mr. Mott guilty of some other, more severe and serious action, then a more drastic example might be appropriate. However, Mr. Mott is but one of the many everyday citizens who made a regrettable decision on January 6, 2021. As has been stated again and again, Mr. Mott had neither design nor plan to commit any unlawful act, merely making spontaneous choices for which he has admitted guilt and accepted responsibility. Let such Judicial vengeance as the Government suggests be

carried out on those who are found guilty and yet refuse to acknowledge their guilt or accept responsibility, not on Mr. Mott.

Specific to this case, the Government offers as proof of the need for incarceration Mr. Mott's posturing in his communication with law enforcement along with the rhetoric from his GiveSendGo fundraising. As has been argued elsewhere herein, Mr. Mott's conduct in his interactions with law enforcement spans a spectrum both of his vocalization of support for them in the execution of their duties and his negative reaction to being stopped with a baton. The Government describes Mr. Mott's physical behavior as "squaring up" (*see* ECF 53 at 16) however this term carries the explicit connotation of aggressive posturing with the intent to engage in physical confrontation. Mr. Mott did not engage in a physical confrontation with law enforcement. Thus, in light of this dissonance, there is no compelling reason for the Court to impose incarceration.

Further, as has also been argued herein, Mr. Mott's GiveSendGo account is not evidence of anything other than pragmatism. It strains reason that the lawful means by which Mr. Mott has raised funds for legal representation should be used against him to impose a sentence of incarceration. Again, Mr. Mott has admitted guilt and accepted responsibility. The means by which he obtained funds to exercise his right to counsel should be irrelevant to this Court's consideration. Indeed, it is offensive to Counsel for the Defendant that the Government not only seeks to criminalize Mr. Mott's fundraising for legal fees, but also encourages a design on the monies raised for Mr. Mott's legal defense (*see* ECF 53 at 16). Does the Government also seek to make an example of Mr. Mott to discourage other defendants from exercising their right to counsel of their choosing and making them fearful of attempting to close the gap in their personal funds by crowd

sourcing? In short, should this Court find any validity to the argument posed by the Government relating to the rhetoric on Mr. Mott's fundraising account, it is a simple enough solution for this Court to inquire of Mr. Mott what the intent of such rhetoric was.

3. To the third, the Government argues that incarceration is necessary to avoid sentencing disparities. However, and the plethora of legal twister that the Government plays to attempt to validate their position aside, they are forced to admit that there is no previously sentenced case which contains the same balance of factors (*see* ECF 53 at 19) as in Mr. Mott's. The three comparative cases offered are all convictions for 40 U.S.C. § 5104(e)(2)(G). However, looking at sentencing disparities for those defendants convicted of this charge as a whole paints a very different picture. By way of producing a small example, in cases:

| | |
|---|---|
| 21-CR-00164-RCL | 21-CR-00384-CJN |
| 21-CR-00097-PLF | 21-CR-00269-TNM |
| 21-CR-00165-TSC | 21-CR-00302-CRC |
| 21-CR-00155-ABJ | 21-CR-00042-ABJ |
| 21-CR-00365-DLF | 21-CR-003630CJN |
| 21-CR-00324-TNM | 21-CR-00098-TFH |
| 21-CR-00068-TNM | 21-CR-00139-TNM |
| 21-CR-00041-CJN | 21-CR-00364-DLF |
| 21-CR-00355-RBW | 21-CR-00621-CRC |

the Court sentenced the defendants to probation of varying duration, community service of varying duration, and monetary restitution of varying amounts with ***no incarceration***. In short, there are more cases where no incarceration was imposed for the self-same charge Mr. Mott faces as where incarceration was imposed. Thus, by the Government's

own argument, it would be far more disparate to impose incarceration than it would be some other combination of factors as has been done in a myriad of other cases.

VI. **The Sentences Available and the Avoidance of Disparity**

The count of conviction 40 U.S.C. §5104(e)(2)(G) – Parading, Demonstrating, or Picketing in a Capitol Building) is a Class B misdemeanor with a maximum term of imprisonment of 6 months. *See* 40 U.S.C. §5109(b) *and* 18 U.S.C. §3581. As a Class B misdemeanor, it is a petty offense under 18 U.S.C. §19. The Sentencing Guidelines do not apply.

A term of probation of up to five years may be imposed in lieu of imprisonment. *See* 18 U.S.C. § 3561(a) and (c). In determining whether to impose a sentence of probation and the length of the probation if imposed, the Court is instructed to consider the factors set forth in 18 U.S.C. §3553(a). *See* 18 U.S.C. § 3562(a). For all the reasons described above, a sentence of probation is sufficient, but not greater than necessary, to satisfy the purposes of sentencing in this particular case. And, for all the same reasons, the term of probation does not need to be lengthy to satisfy the sentencing purposes. Even though the Sentencing Guidelines do not apply, their underlying goal – the avoidance of sentencing disparities – remains applicable. This is an unusual situation in that there are a number of others who have been convicted of the same offense arising from conduct occurring on the same day, making a comparison among cases more possible and more relevant than in the typical federal criminal case.

Several organizations have been collecting data on sentences imposed in cases arising from the January 6 events, including the Department of Justice, the Federal Defenders, and National Public Radio. A review of available sources along with docket information reveals the majority

of those sentenced for 40 U.S.C. §5104(e)(2)(G) received varying degrees of probation, community service, and monetary restitution, as noted previously.

Based on a review of docket information and the sources noted above, Mr. Mott's intrusion into the Rotunda was devoid of the physically violent behavior and long-formed intention evident in some cases. A comparison to other cases suggests that a relatively short sentence of probation would be appropriate in terms of equity in sentencing. Sentences of incarceration have generally reflected more extreme aggravating factors. *See, e.g., United States v. Crurzio*, 21-cr-41 (six months' incarceration for defendant with prior record who refused to leave Capitol after being ordered to do so by police); 21-cr-148 (defendant who advanced to the door of Speaker Pelosi's office sentenced to 45 days' incarceration); *United States v. Reeder*, 21-cr-166 (defendant shown on video to have grabbed and pushed a police officer to the ground received 3 months' imprisonment); *United States v. Ryan*, 21-cr-50 (defendant who traveled to Washington on a private jet and did multiple social media postings, including tweeting that she would not go to jail because she had "blonde hair and white skin," sentenced to 60 days' incarceration).

### VII. Voluntary Restitution is Applicable

Restitution may be ordered under 18 U.S.C. §3663(a)(3), which provides that "The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." There was no damage caused by Mr. Mott's conduct, and no "victim" that would trigger the mandatory restitution provisions of 18 U.S.C. §3663A[3]. Nonetheless, and even with

---

[3] 18 U.S.C. §3663A ("Mandatory restitution to victims of certain crimes") does not apply because there is no "victim" of Mr. Mott's offense as defined in that statute, which requires "an identifiable victim or victims [who] suffered a physical injury or pecuniary loss." 18 U.S.C. §3663A(c)(1)(B). *See also* 18 U.S.C. §3663(a)(2), defining "victim" as "a person directly and proximately harmed as a result of he commission of an offense."

14

no such agreement as a provision of the plea agreement having been made, he has agreed to pay restitution of $500 toward the repair of damage caused by others.

### VIII.   Conclusion

Mr. Mott has accepted responsibility and admitted guilt. He is genuinely remorseful for his conduct and acknowledges the same to this Court. Mr. Mott is well known and respected in his community and aside from a single prior incident, has had no adverse dealings with the legal system. Mr. Mott's community has come forward to express their support and respect for him and to attest to his character. In light of the foregoing, incarceration in Mr. Mott's case is unreasonable and excessive. For all these reasons as set forth herein, a short sentence of probation with the voluntary restitution of $500.00 is sufficient but not greater than necessary to satisfy the sentencing goals of 18 U.S.C. § 3553(a) and the same should be the ruling of this Court.

Respectfully submitted,

*/s/ Gall*

_____
Joseph W. Allen, MO BAR #57669
1015 W. State Hwy. 248 Ste. I
Branson, MO 65616
Telephone:  417/334-6818
Facsimile:  417/612-7081
joe@mybransonattorney.com
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 17th day of April 2023, I filed the foregoing Sentencing Memo by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

_____
Joseph W. Allen